LAWSON, J., dissenting.
The majority concludes that a citation in the Fourth District's three-paragraph decision in Shelly v. State , 199 So.3d 973 (Fla. 4th DCA 2016), expressly and directly conflicts with a sentence in Welch v. State , 992 So.2d 206 (Fla. 2008). It does not. Because we have no authority to decide this case, I dissent.
The Florida Constitution grants this Court authority to "review any decision of a district court of appeal ... that expressly and directly conflicts with a decision of another district court of appeal or of the supreme court on the same question of law." Art. V, § 3(b)(3), Fla. Const. This constitutional provision is the only one alleged as granting us power to decide this case. For this Court to lawfully entertain jurisdiction under this provision, the "[c]onflict between decisions must be express and direct, i.e., it must appear within the four corners of the majority decision " of the district court . Reaves v. State , 485 So.2d 829, 830 (Fla. 1986) (emphasis added). The jurisdictional rationale suggested by the majority fails this well-settled requirement.
According to the majority, a direct conflict is apparent from the following citation in the third paragraph of Shelly :
"When an accused has 'expressed his desire to deal with the police only through counsel, [he] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.' " Moss v. State , 60 So.3d 540, 542-43 (Fla. 4th DCA 2011) (alteration in original) (emphasis added) (quoting Edwards v. Arizona , 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) ).
Shelly , 199 So.3d at 974. See majority op. at 4, 10-14. As discussed further below, the premise that this citation gives rise to express-and-direct conflict jurisdiction is unsound for several reasons: first, the citation is to binding, valid precedent; second, the majority's explanation for the conflict with that precedent depends on facts not stated in the district court's opinion; third, the purported conflict, if it exists at all, is actually between Moss and Welch , rather than Shelly and Welch ; fourth, Welch did not even reach the holding upon which the finding of conflict is based; and, fifth, the purported Welch holding pertains to a matter that was not raised to the Fourth District in Shelly's case.
As to the first observation, the majority holds that a pin citation to an accurate quotation from a binding United States Supreme Court decision creates a conflict between Shelly and one of this Court's decisions. This proposition cannot be valid-unless the allegedly conflicting decision of this Court is erroneous, which the majority has not suggested to be the case. Because all Florida courts are bound by Edwards , the seminal United States Supreme Court case on the Fifth Amendment question decided in Shelly , the language identified by the majority as the sole basis for conflict-a pin citation to an accurate quotation of the Edwards holding-cannot *20 support a finding of express and direct conflict between the district court's decision and one of this Court's decisions. See Miami Home Milk Producers Ass'n v. Milk Control Bd. , 124 Fla. 797, 169 So. 541, 544 (1936) (explaining that "we are of course bound by the decisions of" the United States Supreme Court "construing the meaning and effect of" provisions of the United States Constitution). The majority's reliance on the Moss citation as its basis for finding jurisdiction is also analytically indistinguishable from reliance on a citation in a district court decision that merely affirms with citation-which is clearly unauthorized. Gandy v. State , 846 So.2d 1141, 1143 (Fla. 2003) ("This Court does not have jurisdiction to review per curiam decisions of the district courts of appeal that merely affirm with citations to cases not pending review in this Court." (quoting Persaud v. State , 838 So.2d 529, 532 (Fla. 2003) ).
Despite these oversights, given the majority's lengthy recitation of facts and legal analysis of the " Edwards rule" issue, see Oregon v. Bradshaw , 462 U.S. 1039, 1045-46, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983) (discussing "the Edwards rule"), one could easily come away with an impression that this Court must have jurisdiction given the majority's explanation of how the Fourth District misapplied Edwards to reach an incorrect result. However, none of the facts relevant to the majority's legal analysis are set forth in the Shelly opinion. Therefore, they cannot support the majority's exercise of jurisdiction. See Gandy , 846 So.2d at 1144 (explaining that in "cases where the district court has not explicitly identified a conflicting decision, it is necessary for the district court to have included some facts in its decision so that the question of law addressed by the district court in its decision" is manifest within the four corners of the decision and can serve as a basis for conflict jurisdiction (quoting Persaud , 838 So.2d at 532 ) ).
As explained in Reaves :
The only facts relevant to our [jurisdictional decisions] are those facts contained within the four corners of the decisions allegedly in conflict.... [W]e are not permitted to base our conflict jurisdiction on a review of the record .... Thus, it is pointless and misleading to include a comprehensive recitation of facts not appearing in the decision below.
Reaves , 485 So.2d at 830 n.3. Applying this rule to the Shelly decision should end our jurisdictional review. The facts and law stated in the Fourth District's decision show that the issue raised to the Fourth District was simply whether Shelly's statements were the result of the officer's failure to cease interrogation after Shelly invoked his rights or whether Shelly reinitiated communication under Edwards . See Shelly , 199 So.3d at 974. Given the Fourth District's summary conclusion that "Shelly ... was the one who reinitiated communications with the officers," id. , and inclusion of no facts from which a reader could question its resolution of the issue, id. , we do not have jurisdiction to decide the issue. Gandy , 846 So.2d at 1144 ; Reaves , 485 So.2d at 830.[6]
*21 It should also be apparent from the majority's circuitous explanation of a conflict between Shelly and Welch , based upon a purported conflict between Moss and Welch , see majority op. at 10-14, that even if the majority's described conflict existed it would not be manifest "within the four corners of" the Shelly decision, Reaves , 485 So.2d at 830, and it would not place Shelly in "direct" conflict with Welch as required by Florida's constitution before we can hear this case. Mystan Marine, Inc. v. Harrington , 339 So.2d 200, 201 (Fla. 1976) ("The jurisdiction of this Court extends only to the narrow class of cases enumerated in [a]rticle V, [s]ection 3(b) of the Florida Constitution."). After all, even if Moss had preceded Welch and Welch had expressly overruled Moss on a different question of law, Shelly could have still pin-cited to the Edwards quote in Moss and this still would not have given rise to an express and direct conflict between Shelly and Welch "on the same question of law." Art. V, § 3(b)(3), Fla. Const. Indeed, although the majority asserts as its jurisdictional rationale that the Shelly court came into conflict with our precedent by citing the Edwards rule, the majority's merits decision in this case is based on its application of this very rule to facts not stated in the Shelly opinion. Majority op. at 16-18.
Moreover, even the indirect and unexpressed conflict identified by the majority does not exist because Welch could not and did not reach the holding on which the majority's jurisdictional rationale is based.
The majority begins its conflict analysis by "hold[ing] that Welch is the correct standard when evaluating circumstances where an accused has invoked his or her right to counsel or silence and then subsequently has allegedly reinitiated communication with officers." Majority op. at 11 (emphasis added). Then, the majority sets out to explain the origin of the Welch "standard" and to contrast this new standard with what it describes and rejects as the incorrect rule set forth in Moss . Majority op. at 10-14. Ironically, the standard the majority rejects as incorrect is found in a single sentence in the Moss opinion that is not cited or addressed in Shelly and that simply quotes the standard dictated by the United States Supreme Court in Smith v. Illinois , 469 U.S. 91, 95, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984). Moss states:
[I]f the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked.
60 So.3d at 544 (quoting Smith , 469 U.S. at 95, 105 S.Ct. 490 ). How could a state court legally err by correctly quoting binding precedent from the United States Supreme Court on an issue of United States constitutional law, or how could this Court have adopted a different standard on this Fifth Amendment issue in Welch ? See Milk Control Bd. , 169 So. at 544 (explaining that this Court is bound by decisions of the United States Supreme Court on questions of United States constitutional law).[7] Of course, neither proposition could occur.
*22 Nevertheless, the majority opines that the Moss panel erred and came into conflict with Welch by quoting the United States Supreme Court's decision in Smith because Smith leaves out a purported independent third inquiry, supposedly recognized in Welch as an expansion of the rule set forth in Smith , majority op. at 13, that (c) "the accused be reminded of his or her rights" after he or she reinitiates communication. Majority op. at 11. The majority asserts that Welch gleaned this extra requirement from the United States Supreme Court's plurality opinion in Bradshaw , which was issued before the Court decided Smith . Majority op. at 11. In so concluding, the majority fails to explain how an earlier plurality opinion ( Bradshaw ) from the United States Supreme Court could trump a later majority opinion ( Smith ) from that Court on the same issue.
The majority does acknowledge that the supposed Bradshaw "standard is not explicitly stated in Bradshaw . " Majority op. at 11. However, the majority fails to acknowledge that Bradshaw unequivocally uses the same two-step analysis as Smith . See Bradshaw , 462 U.S. at 1044-46, 103 S.Ct. 2830 (applying the " Edwards rule" as the first inquiry in this context and identifying "the next inquiry [as] 'whether a valid waiver of the right to counsel and the right to silence had occurred, that is, whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances' " (quoting Edwards , 451 U.S. at 486 n.9, 101 S.Ct. 1880 ) ). Contrary to the majority's assertion, the United States Supreme Court has never articulated or implied a third inquiry or standard requiring that police "remind" the accused of his or her Miranda rights, in Bradshaw or any other case. Rather, both Edwards and Bradshaw make clear that the waiver issue involves a totality-of-the-circumstances test. Bradshaw , 462 U.S. at 1046, 103 S.Ct. 2830 ("[T]he next inquiry was 'whether a valid waiver of the right to counsel and the right to silence had occurred, that is, whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances ....' " (quoting Edwards , 451 U.S. at 486 n.9, 101 S.Ct. 1880 ) (emphasis added) ).[8] And, as explained below, this Court did not reach a different conclusion in Welch .
Welch did not add to the two-step analysis required by the United States Supreme Court and did not create a new standard-which is the foundation of the majority's jurisdictional analysis. Welch was a direct appeal following a plea of guilty to two counts of first-degree premeditated murder *23 (among other charges) and a penalty-phase trial in which Anthony Welch was sentenced to death for the two murders. 992 So.2d at 208-09. This Court reversed, ordering a new penalty-phase trial due to an error in jury selection. Id. at 212-13. After thoroughly analyzing the jury selection issue, the Court "touch[ed] briefly on some of the remaining claims in order to provide guidance for the new penalty phase." Id. at 213. One of those issues was Welch's claim "that the trial court erred in denying his motion to suppress the incriminating confession he made at the Broward County Sherriff's Office." Id.
Welch was interviewed at the sheriff's office after waiving his Miranda rights. Id. He then announced that he no longer wanted to talk, and the first interview concluded. Id. Welch, however, reinitiated communication and police again advised him of his Miranda rights before the second interview. Id. In its "brief touch" of the legal issues surrounding Welch's argument, the Court did not analyze the law in this area but simply summarized it. Id. at 214 (summarizing Miranda and Edwards ). Then, citing Bradshaw , Welch states:
[E]ven when an accused has invoked the right to silence or right to counsel, if the accused initiates further conversation, is reminded of his rights, and knowingly and voluntarily waives those rights, any incriminating statements made during this conversation may be properly admitted.
Id. It made perfect sense for this Court in Welch to cite Bradshaw because the facts of the two cases appear legally indistinguishable, including the words used by each suspect to "reinitiate" communication. Compare Bradshaw , 462 U.S. at 1043-44, 103 S.Ct. 2830 (holding that suspect's unprompted question, "Well, what is going to happen to me now?" satisfied Edwards rule) with Welch , 992 So.2d at 213-14 (citing Bradshaw and holding that suspect's unprompted question, "What is going to happen to me now?" satisfied Edwards rule).
The sentence quoted from Welch is accurate if viewed as summarizing a factually indistinguishable case in which the United States Supreme Court found no violation of a suspect's Fifth Amendment rights. If viewed in this light, the quoted sentence from Welch is not inconsistent with the "standard" set forth in Smith and quoted in Moss- comprising two distinct and separate inquires. Bradshaw , 462 U.S. at 1044-45, 103 S.Ct. 2830 (explaining that Edwards rule is a "separate" inquiry that should not be "meld[ed] together" with the different and distinct question of whether, after the suspect reinitiates communication, "subsequent events indicate[ ] a waiver of the Fifth Amendment right to have counsel present during the interrogation"). The accuracy of this view is established both by what the Welch opinion says next and by what this Court did not say at all in that opinion.
Although Welch does not cite Smith, it does go on to conduct the same two-step analysis recited in Smith after its summary explanation of Bradshaw . "First," the Court concluded that Welch reinitiated communication with an unsolicited question almost identical to the unsolicited question in Bradshaw . Id. at 214. Then, in the next paragraph, the Court stated:
Second, Welch's incriminating confession was made after a voluntary, knowing, and intelligent waiver of his Miranda rights.
Id. at 215. Although the Court discussed the fact that Welch was "again advised of his Miranda rights," this observation was made in support of its conclusion that Welch's waiver of his Miranda rights was valid-the same analytical framework used *24 in Bradshaw , summarized in Smith , and quoted in Moss . See id.
Significantly, nowhere in its "brief touch" on this issue did this Court hint that it was creating a new standard that "expands the requirements of," majority op. at 24, the very analytical framework that it employed. The majority's conclusion that this is how Welch should be read, which is the basis for its jurisdictional determination, is incorrect. Because this Court cannot change the requirements of federal law-by expansion or otherwise-it should be clear that Welch did not add a requirement to the federal framework for addressing the issues resolved in Welch and, consequently, that the majority's basis for reviewing this case-conflict between Welch and the Moss court's citation of binding United States Supreme Court precedent-is invalid. See supra p. 21.
Finally, that the majority reaches outside the bounds of our constitutional authority to take this case is evident because the majority bases its jurisdictional determination on issues that were not argued-and, therefore, not decided-below. Shelly's arguments to the Fourth District (and this Court) focused on the reinitiation question-the Edwards rule-and not the separate question of whether a knowing and intelligent waiver of his Fifth Amendment rights followed any such reinitiation. Consequently, that separate totality-of-the-circumstances inquiry is not an issue properly before this Court-and the same would be true of the supposed Welch requirement that police remind the suspect of Miranda rights. Shelly never raised that as an issue for review because it was not implicated by the facts of the case (as the police did restate the Miranda warnings). Therefore, the majority should not have based its jurisdictional determination on a purported conflict on a question of law that the Fourth District did not address. In fact, irrespective of the label it uses, the majority's adoption of a new standard under the guise of a jurisdictional analysis is dicta resolving a purported conflict that does not appear in the four corners of the Fourth District's decision and is not even germane to an issue presented to this Court for review in the merits briefs. State v. Yule , 905 So.2d 251, 259 n.10 (Fla. 2d DCA 2005) ("A holding consists of those propositions along the chosen decisional path or paths of reasoning that (1) are actually decided, (2) are based upon the facts of the case, and (3) lead to the judgment. If not a holding, a proposition stated in a case counts as dicta.") (Canady, J., specially concurring) (quoting Michael Abramowicz & Maxwell Stearns, Defining Dicta , 57 Stan. L. Rev. 953, 1065 (2005) ); New Port Largo, Inc. v. Monroe County , 985 F.2d 1488, 1500 n.7 (11th Cir. 1993) (explaining that even a statement labeled as a holding is not a holding unless it decides a matter that "was squarely presented by the facts of the case and was a proposition that absolutely must have been decided to decide the concrete case then before the court") (Edmonson, J., concurring specially) (emphasis added).
The majority reads a conflict into the Fourth District's decision by pointing out the Fourth District's conclusion that Shelly reinitiated communication with the officers and then explaining, in reliance on Welch , that whether the accused reinitiates communication after invoking his right to silence or counsel is not the end of the inquiry when the accused argues on appeal that his confession should have been suppressed because he invoked his right to an attorney. Majority op. at 10-14. This approach to express-and-direct conflict jurisdiction overlooks the limited role Florida's appellate courts have in addressing trial-court error. The district court in this case was required to rule only on the issues *25 properly raised and argued by Shelly in his appellate briefs. See City of Miami v. Steckloff , 111 So.2d 446, 447 (Fla. 1959) ("It is an established rule that points covered by a decree of the trial court will not be considered by an appellate court unless they are properly raised and discussed in the briefs."); see also Bainter v. League of Women Voters of Fla. , 150 So.3d 1115, 1126 (Fla. 2014) (" 'Basic principles of due process'-to say nothing of professionalism and a long appellate tradition-'suggest that courts ... ought not consider arguments outside the scope of the briefing process.' " (quoting Powell v. State , 120 So.3d 577, 591 (Fla. 1st DCA 2013) ) ); Rigterink v. State , 66 So.3d 866, 897 (Fla. 2011) (declining to address whether an alleged error was fundamental because the appellate brief did not argue that it was); Fla. Emergency Physicians-Kang & Assocs., M.D., P.A. v. Parker , 800 So.2d 631, 636 (Fla. 5th DCA 2001) (noting the well-settled rule that appellate courts "do not address issues not clearly set out in the issues on appeal"). It is clear from the four corners of the Fourth District's opinion that Shelly raised a narrow issue to the Fourth District: whether the officers violated his right to counsel by reinitiating communication with him after he invoked that right. See Shelly , 199 So.3d at 974.
Having received the record after jurisdiction was improvidently granted in this case, we can confirm that Shelly's Fourth Amendment argument to the district court was as narrow as the opinion indicates. In ruling on Shelly's motion to suppress, the trial court identified the pertinent inquiries as (1) whether Shelly's confession resulted from the detective's failure to scrupulously honor Shelly's invocation of his right to remain silent or from Shelly's reinitiation of communication and (2) whether, after any such reinitiation, Shelly's decision to waive his rights again was voluntary, knowing, and intelligent. The trial court found in favor of the State as to each inquiry, and Shelly's appellate argument focused on the first inquiry, involving Shelly's lack of "reinitiation" under the governing standards. Given Shelly's limitation of his appellate argument, the district court was not required to address anything further and, in fact, would have been in error to do so. See Sebo v. Am. Home Assurance Co. , 208 So.3d 694, 699 n.2 (Fla. 2016) (opining that the district court improperly decided an issue where it was neither preserved in the trial court nor raised to the district court); Steckloff , 111 So.2d at 447. And, given this limited role of an appellate court, the district court's failure to address anything beyond the reinitiation of communication does not expressly and directly conflict with any case law discussing the second inquiry.
Ultimately, from the four corners of the Shelly decision, it is clear that the issue that was raised and decided was simply whether error occurred at the first step of the Edwards test, not whether any subsequent waiver was valid under Welch . See id. Because conflict must appear on the face of the two decisions being compared to be express and direct and therefore empower this Court to exercise jurisdiction, Reaves , 485 So.2d at 830, the Florida Constitution dictates that we discharge this case irrespective of our view of the merits or importance of the issue that would otherwise be presented. See art. V, § 3(b)(3), Fla. Const.
CANADY, C.J., and POLSTON, J., concur.

If the facts relied upon by the majority to find a Miranda violation in this case appeared on the face of the district court opinion, we would probably have jurisdiction based on some case in our precedent finding a Miranda violation under indistinguishable circumstances. However, Welch would not qualify as such a case. This Court concluded in Welch that the defendant reinitiated communication by asking a direct, unsolicited question about the investigation after being left alone for more than forty-five minutes. Welch , 992 So.2d at 214. The circumstances of the reinitiation in Welch are not comparable to those of the instant case and, therefore, do not control one way or the other the determination of whether it was Shelly or the detective who reinitiated communication.

Although this Court could develop a Florida standard governing the right against self-incrimination under article I, section 9 of the Florida Constitution, provided that the standard gives citizens at least as much protection as does the federal constitution, Traylor v. State , 596 So.2d 957, 961 (Fla. 1992), that is not what occurred in Welch . Welch was a straightforward application of federal precedent to a Fifth Amendment issue with no reference to the Florida Constitution. See 992 So.2d at 213-15.

As a practical matter, police would usually need to reinstruct the accused on his or her Miranda rights, after the accused's reinitiation of communication, to assure that the waiver is knowing and intelligent (and to be able to prove it later). This reminder was given in Bradshaw, Smith, Welch, and Shelly . However, it is easy to think of a circumstance where this reminder would be unnecessary to meet the totality-of-the-circumstances "valid waiver" test set forth in Edwards and Bradshaw .
For example, the accused could be a seasoned criminal defense attorney who reinitiated contact by reminding police of her profession and stating that she was fully aware of the Edwards rule and was reinitiating communication with full knowledge that she was waiving her right to counsel and other Fifth Amendment rights. In that scenario, the State could easily demonstrate a valid waiver irrespective of whether police reminded her of those rights. Under the new standard explained in the majority opinion, however, it appears that any statements made by the accused would still be suppressed unless police also independently reminded her of those rights. Majority op. at 11. This approach is misguided and inconsistent with the Edwards and Bradshaw totality-of-the-circumstances test.