DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**FRANK J. QUARLES, III,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D18-1502

[February 19, 2020]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Samantha Schosberg Feuer, Judge; L.T. Case No. 2012CF001830AXX.

Carey Haughwout, Public Defender and Ian Seldin, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee and Melanie Dale Surber, Senior Assistant Attorney General, West Palm Beach, for appellee.

DAMOORGIAN, J.

Frank J. Quarles, III ("Defendant") appeals his conviction and sentence for second-degree murder with a firearm, possession of a firearm by a minor, and carrying a concealed firearm. Concluding that Defendant's confession while in custody was not voluntary, we reverse and remand for a new trial.

The then fifteen-year-old Defendant was arrested and charged with the first-degree murder of Michael Robertson ("the victim") after three witnesses identified Defendant as the shooter. The evidence presented at trial established that on the day of the murder, three witnesses and the victim were gathered outside of the home of one of the witnesses. Defendant arrived at the home and confronted the victim about stealing his bicycle. The two began to argue, during which Defendant stated he had a "38" and was going to get it. Defendant took the bicycle and left.

About 10-15 minutes later, Defendant returned with a friend and approached the victim and the witnesses. Defendant and the victim again

began to argue. At some point during the argument, Defendant pulled a black .38 caliber revolver from his waistband and pointed it at the victim. Defendant told the victim he was "not scared to pull the trigger over a bike," to which the victim responded that he was not afraid of the gun. Defendant shot the victim in the chest and then fled on the bicycle. The police arrived at the scene and found the victim with a gunshot wound to his chest. The victim later died from the gunshot wound.

Defendant was arrested and taken to the Palm Beach County Sheriff's Office, where a detective advised him of his juvenile *Miranda* rights. The detective also informed Defendant that a lawyer had been hired to represent him, and the lawyer did not want Defendant to speak to the detective. Defendant refused to make a statement, whereupon he was taken to a holding cell. Approximately 50 minutes later, Defendant began banging on the door of the holding cell saying he wanted to talk to the detective. The detective escorted Defendant back to the interrogation room and the following discussion took place:

**Q:** I guess it was about an hour ago that we talked, okay? I read your Miranda warnings to you. It was pretty thorough, you're a pretty smart guy. Do you still understand them?

**A:** Yes, sir.

**Q:** Do you still understand everything that we talked an hour ago about? You understand everything?

**A:** Yes, sir.

**Q:** Okay. You're reinitiating wanting to talk to me. Did I force you to want to talk to me?

**A:** No.

**Q:** Okay. What do you want to talk to me about?

**A:** What happened.

Defendant stated he accidentally shot the victim.

Before trial, Defendant moved to suppress his post-*Miranda* interrogation statements, arguing, *inter alia*, his wavier was involuntary. The court denied the motion, and the case proceeded to trial. Defendant

was found guilty of the lesser included offense of second-degree murder with a firearm, possession of a firearm by a minor, and carrying a concealed firearm. This appeal follows.

On appeal, Defendant argues that the court erred by: (1) denying Defendant's motion to suppress his interrogation statements; (2) denying Defendant's motion for mistrial because the jury was exposed to inadmissible evidence; (3) overruling Defendant's objection regarding the deputy's testimony; and (4) overruling Defendant's objections to statements made in closing. Lastly, the cumulation of the errors denied Defendant a fair trial. We conclude that only the first argument merits discussion. Accordingly, the balance of this opinion will explain our holding that Defendant's confession was not freely and voluntarily given and should have been suppressed.

We are guided in our decision by two cases from the Florida Supreme Court. In *Welch v. State*, the Florida Supreme Court held that "even when an accused has invoked the right to silence or right to counsel, if the accused initiates further conversation, *is reminded of his rights*, and knowingly and voluntarily waives those rights, any incriminating statements made during this conversation may be properly admitted." 992 So. 2d 206, 214 (Fla. 2008) (emphasis added) (citing *Oregon v. Bradshaw*, 462 U.S. 1039, 1045–46 (1983)). It explained "[w]here, as here, the accused had invoked his right to silence but later initiated a conversation with law enforcement and subsequently exercised a voluntary, knowing, and intelligent waiver after being advised of his rights for the *second time*, the resulting confession is admissible under *Bradshaw*." *Id.* (emphasis added).

More recently, in *Shelly v. State*, the Florida Supreme Court reiterated that *Welch* is the correct test and it includes "a requirement that the accused be specifically given his or her *Miranda* rights *after an alleged reinitiation.*" 262 So. 3d 1, 13 (Fla. 2018). In other words, police must again re-read the *Miranda* rights before commencing further conversation.

Here, after Defendant invoked his right to remain silent, the detective stopped talking to Defendant. Less than one hour later, Defendant changed his mind and wanted to speak with the detective. Although the detective did make a reasonable inquiry into whether Defendant remembered and understood his *Miranda* rights, and that his desire to speak with the detective was not coerced, the detective did not re-read to Defendant his *Miranda* rights. Under the Supreme Court's mandate in *Shelly*, the detective's failure to do so rendered Defendant's confession involuntary.

In addition, it cannot be said that "there is no reasonable possibility that the error contributed to the conviction." *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986). Defendant's interrogation was a central factor to the State's case. It was highlighted repeatedly in the State's presentation to disprove manslaughter and repeatedly referenced in closing. The jury also requested to view the video of the confession again during deliberations.

Having concluded that the court erred in denying Defendant's motion to suppress his statements and that the error was not harmless, we reverse and remand for a new trial.

*Reversed and remanded for a new trial.*

GROSS and KLINGENSMITH, JJ. concur.

\*　　　\*　　　\*

***Not final until disposition of timely filed motion for rehearing.***

4